## Case No. 18,076.
### WRIGHT v. DEKLYNE.
[Pet. C. C. 199.] [1]
Circuit Court, D. New Jersey.    April Term, 1816.

DISMISSAL OF BILL—CONCLUSIVENESS—EVIDENCE—DECLARATIONS OF WITNESS—PAROL EVIDENCE—CONTRADICTION OF WRITING.

1. The dismission of a bill in chancery, is not conclusive against the complainant, in a court of law, although the bill may have been brought for the same matter.

[Explained and limited in Smith v. Kernochen, 7 How. (48 U. S.) 217.]

[Cited in Cramer v. Moore, 36 Ohio St. 350; Tucker v. Harris, 13 Ga. 1.]

2. The decision of a court of competent jurisdiction, directly upon the same point, is conclusive, whenever it may again come in question.

[Cited in Sarchet v. The General Isaac Davis, Case No. 12,357.]

[Cited in White v. Coatsworth, 6 N. Y. 143; Wyman v. Campbell, 6 Port. (Ala.) 219. Cited in brief in Gardner v. Buckbee, 3 Cow. 126.]

3. Declarations of a witness, cannot be given in evidence, except only, in answer to evidence of other declarations of the witness, inconsistent with what he had previously sworn to.

[Cited in Coffin v. Anderson, 4 Blackf. 399. Cited in brief in Shaw v. Emery, 42 Me. 61.]

4. Parol evidence of the declarations of an auctioneer, contrary to the written terms of sale, is not admissible; but such evidence, as to the property intended to be sold by him, is proper.

[Cited in Chouteau v. Goddin, 39 Mo. 249.]

This was an action of ejectment, brought to recover a moiety of certain islands and flats in the river Delaware. The property was, in the year 1752, granted to three persons, of the name of Watson, Bond and Salter; who held separate tracts of land, on the main land opposite to it. In 1765, Salter conveyed one half of his main land, containing 357 acres, and one half of his share of those islands and flats, to a man by the name of Pidgeon; and in 1768, he conveyed the other half, to Samuel Meredith. In April, 1767, Watson conveyed to his son, his share of the islands and flats; who in 1772, conveyed the same, to the aforesaid Samuel Meredith. In 1778, Meredith conveyed to the defendant the above mentioned tract of land, purchased from Salter, by the name of his plantation, by certain bounds; confining it on the side of the Delaware, by that river; also a lot, containing twelve acres, adjoining; and also, all his share of the islands and flats, purchased from Salter and Watson. In 1785, the defendant conveyed to Philip Nicklin, by way of mortgage, all the above property described, and bounded as in Meredith's deed to him. Sundry judgments having been obtained against the defendant, executions issued against him; which were returned by the sheriff, "levied on a plantation called 'Meredith's Farm,' containing 350 acres, and

[1] [Reported by Richard Peters, Jr., Esq.]

three other plantations adjoining," described by certain names and quantities of land, contained in each. The sheriff advertised the plantation, called "Meredith's Farm," for sale to the highest bidder; and the same was knocked off to the aforesaid Philip Nicklin; to whom the sheriff made a deed for the same; and also for the aforesaid islands and flats. In 1792, Nicklin conveyed the said property, to the lessor of the plaintiff.

The only question as to the title was; whether the islands and flats in dispute, were levied upon, under executions, and were advertised and sold; it being admitted, by the defendant's counsel, that if they were, he had no title; and this question depended upon another, which was, whether the islands and flats, were to be considered, upon the evidence, to have been parcel of the plantation called "Meredith's Farm," when the levy was made. To prove the affirmative of this proposition, the plaintiff examined a number of witnesses, who stated; that the islands and flats were so considered, and that in one or two instances, where the defendant had offered Meredith's farm for sale, he had spoken of this property, as constituting much of its value. It was also proved, that previous to the issuing of the executions, under which this property was sold, the defendant had sent to Nicklin, to whom he was indebted, a list of his property, in order to satisfy him, that his debt was safe; in which, Meredith's farm, but not the islands, was mentioned. Other witnesses, on part of the defendant stated; that the islands and flats, were never considered as parcel of, or attached to the farm. That the farm was generally rented to one person, and the islands to another; and in no instance, were they ever leased to the same tenant. It was further proved by two witnesses, that after Meredith's farm was put up for sale, the sheriff was asked, whether the islands and flats were included; when he answered, that they were not, that he sold to low water mark; that this was publicly said, so that Nicklin might have heard it; although the witnesses could not swear that he did. It appeared by record, which was given in evidence, that the defendant had filed a bill, in the court of chancery of this state, against Nicklin and the lessor of the plaintiff; alleging that the property now in dispute, had not been taken in execution by the sheriff; that it was not sold to Nicklin; and that the deed, so far as it included the same, was procured by fraud; and praying, that it might be reconveyed. Upon a hearing of the cause, the court of chancery decreed a reconveyance of the property now in dispute; which decree, upon an appeal, was reversed, and the bill dismissed. The petition of appeal, stated amongst other reasons for a reversal, that the complainant had an adequate remedy at law, and consequently, that he was not entitled to the aid of a court of equity; and

that even, if that court could entertain the cause, an issue should have been directed. The court of appeals assigned no reasons for the decree of reversal, and dismissal of the bill.

It was contended by Williamson; Ewing & Wall, for the lessor of the plaintiff, that the decree of reversal was conclusive in this cause, against the title of the defendant; and that it is not now competent for him to contend, that the property in dispute was not levied upon and sold; those points having been completely in issue, in the former suit, and decided against him by the court of appeals. They cited the cases noted below.[2]

Stockton & Griffith on the other side, cited a number of cases.[3]

WASHINGTON, Circuit Justice. The decree of dismission, is not conclusive. The rule is admitted, that the decision of a court of competent jurisdiction, directly upon the same point, is conclusive; where the same point comes again in controversy, directly or collaterally. But what is the point directly decided by dismissing a bill in equity? nothing more than this, that the case is not fit for the decision of that court; that the complainant, who must rest entirely upon the equity of his case, has not supported that claim, and therefore has not shown himself entitled to the aid of a court of equity; for which reason, he is turned out of that court. This dismission would be a bar to a new bill; because the same question must arise, viz. whether his case is such, as to entitle him to the relief of a court of equity. But in relation to a strictly legal title, the dismission proves nothing for or against it. If the complainant seeks in a court of equity, to enforce a strictly legal title, when his remedy at law was plain and adequate, the dismission of his bill amounts to a declaration, that he has no equity, and the court no jurisdiction; but it casts no reflection whatever, upon his legal title; it decides nothing in relation to it, and consequently can conclude nothing against it. If this be so, in ordinary cases, the doctrine acquires additional strength, in a case like the present; where the want of jurisdiction in the court of chancery, was one of the grounds for a reversal, stated in the petition of appeal. This petition, together with the answer which was filed by the opposite party, constitutes the pleadings (if the term may be applied to such proceedings) of the appellate court; more

properly perhaps, it is the assignment of errors, and the plea to it. Now, if the court gives no reason for dismissing the bill, and the case stated in the pleadings, is to be resorted to, to ascertain what was the point directly decided by the court; how can this court say, that the title of the present defendant was decided; when another ground for a reversal was stated, which would have warranted such a decision? With a view to this principle, the sentence of a foreign prize court, which is ambiguous on the face of it, as to the ground of condemnation, is not regarded in an action on a policy of insurance, on a question of warranty of neutrality. The reason is, that if the sentence may have proceeded, on any other ground than that of enemy's property, it establishes with certainty, no fact, inconsistent with the asserted neutrality of the property insured.

In the course of the trial, the defendant offered evidence to prove declarations of the sheriff, made prior to the sale, that he did not mean to sell the property now in question; and that the same had not been levied upon. The plaintiff admitted, that he meant to offer a deposition, to contradict some circumstances stated by the sheriff, in his deposition, which occurred when the deed was executed. The particular declaration of the sheriff, now offered to be proved, was made a few days before the sale, in answer to enquiries made by a person, who intended to become a bidder, in case the islands should be offered for sale. This evidence was objected to. 1 Esp. 357; 5 Ves. 700; 5 Johns. 426; 1 Mass. 69; Phil. Ev. 212; Bull. N. P. 294; 2 Esp. N. P. 519.

WASHINGTON, Circuit Justice. Declarations of a witness, cannot be given in evidence, except in answer to evidence of other declarations of the witness, inconsistent with what he had before sworn to. The evidence, which the plaintiff intends to offer, to contradict what the sheriff has sworn to, is not of this nature. It relates to a different transaction, and does not import a contradiction of what that witness has sworn to, by declarations inconsistent with it. The declarations offered to be proved, by the defendant, relate to the sale, and the opposing evidence, proves no more, than that the two witnesses disagree as to some circumstances, which passed when the deed was executed. The evidence is therefore improper.

It was contended by the plaintiff's counsel, in summing up: First, that upon the evidence in the cause, it appeared, that the property in dispute, was parcel of Meredith's farm, and as such, was levied upon and sold; second, that the evidence of the two witnesses, in relation to the declarations of the sheriff at the sale, that the property in dispute was not to be sold, were not to be regarded, in opposition to the written terms of

[2] Amb. 756; Peake, Ev. 34, 36; 1 Salk. 290; 3 Term R. 129; Cowp. 322; 2 Strange, 960b; 1 Johns. Cas. 492; [Croudson v. Leonard] 4 Cranch [8 U. S.] 436; 3 Hen. & M. 140; 2 Bay. 454; Coop. Eq. 270; 1 Vern. 310; 2 Munf. 162; Bull. N. P. 244; 3 Atk. 626; 2 Brown, Parl. Cas. 396, 435, 443, 445; 9 Johns. 614; 5 Johns. 430.

[3] 1 Atk. 571; Park. 353; [Maley v. Shattuck] 3 Cranch [7 U. S.] 488; 11 State Tr. 261; Peake, Ev. 71; 3 Term R. 639; Phil. Ev. 236.

the sale, which stated, that Meredith's farm was to be sold. That such parol declarations should not be admitted, to control the import of the written advertisement and terms of sale. Sugd. 21; 1 H. Bl. 289; Peake, Ev. 55; 2 Atk. 97.

WASHINGTON, Circuit Justice (charging jury). As to the second point, the general rule of law is, that parol evidence of declarations of an auctioneer, to contradict the written terms of the sale, ought not to be admitted; as it might introduce great uncertainty as to titles, derived under sales at auction. But the parol evidence given in this case, is perfectly consistent with the written notice, and the terms on which the sale was to take place. The advertisement states, that Meredith's farm was to be sold; but it does not state, that the whole tract would be cried off, at one time; and if the property in dispute be in fact, parcel of Meredith's farm, the sheriff had certainly a right, at the time of sale, to sell a part only, if he thought such part would be sufficient to satisfy the execution. If one thousand hogsheads of sugar are advertised to be sold, surely the auctioneer may sell them in such lots, as he is directed. But, if the purchaser should insist that he had purchased the whole, how can this fact be ascertained, except by evidence of persons at the sale; and in the absence of other evidence, what reason can exist why it may not be proved in that way? Such evidence, does not contradict, but is perfectly consistent with the written terms of sale. This is very different from the case where, for instance, the sale is advertised to be with warranty, and evidence offered of declarations by the auctioneer, that the sale was to be without warranty.

As to the case upon the merits, it depends upon a single fact, to be decided by the jury; which is, whether the property in dispute was parcel of what was called "Meredith's Farm," at the time the levy was made by the sheriff. There are various ways, by which one parcel of land is distinguished from another; sometimes by names given to it, or by boundaries or situation. When the distinction is once made, the parcels continue separate, whether they belong to different persons, or are owned by the same person. It is true, that the owner may destroy the distinction, and consolidate both parcels in one, under one name. By his acts, the two parcels may gain by reputation a common name, so as to pass by deed or will, consistently with the intention of the grantor or devisor. But the mere act of cultivating the two parcels by the same owner, is not sufficient of itself to make one parcel part of the other.

What then have been the acts of the different persons, who have become successively owners of Meredith's farm, and of the property in dispute? Watson, Bond and Salter, were originally separate proprietors of a farm in this state, adjoining each other, and extending to the river Delaware. They afterwards appropriated to themselves, as tenants in common, certain islands and flats, containing about 90 acres in front of their farms, in the river, and separated by an inconsiderable flow of the river from their farms. Salter conveyed one half of his plantation to one Pidgeon, and the other half to Samuel Meredith, by certain boundaries, extending to the river, and containing a certain number of acres. In the same deeds, he also conveys one half of his share of the islands and flats to Pidgeon, and the other to Meredith; describing this property by its only appropriate names, as "islands" and "flats." Watson, afterwards, conveyed his third part of these islands and flats, to Meredith. Thus, Meredith became entitled to a tract of land, distinguished as a plantation, as containing a certain number of acres, and separated from the islands, by a line running to low water mark. He conveyed the whole to the defendant, distinguishing in like manner, the plantation and the islands. In the year 1786, the defendant mortgaged the whole of this property to Nicklin, the purchaser at the sheriff's sale, in which the same distinction is preserved. It is also to be remarked, that the defendant always kept them distinct, renting the farm to one tenant, and the islands and flats to another to be used as a fishery. The sheriff, in the year 1788, levied his execution on Meredith's farm, and the jury are to say, whether, at that or at any other time, the islands had become parcel of that farm. So far as the documentary evidence goes, there is not the slightest ground for asserting, that they had. Throughout, Meredith's farm, has been described as a plantation, bounded by certain lines, excluding the islands, and containing a precise number of acres. The property in dispute, was in like manner described, as islands and flats.

As to the parol evidence offered by the plaintiff, to prove that the islands were considered as parcel of Meredith's farm, which is contradicted by evidence of the same nature, on the other side, the court give no opinion. But they will remark, that all such evidence, when opposed to the written documents, which have been laid before the jury, should be listened to with caution; the one may be founded upon conjecture and misapprehension, the other cannot deceive.

Verdict for defendant.